488 So.2d 372 (1986)
Arthur James RUSSO, Plaintiff-Appellee,
v.
VERAN, INC., et al., Defendants-Appellants.
No. 85-511.
Court of Appeal of Louisiana, Third Circuit.
May 14, 1986.
*373 Roy & Hattan (L. Lane Roy, Lafayette, for defendants-appellants.
Donna D. Garbarino, of Glusman, Moore, T.C., Baton Rouge, Joseph E. Windmeyer, Metairie, Patrick J. Briney, Edwin G. Preis, Jr., Lafayette, Burton E. Cestia, Jr., New Iberia, Arthur I. Robinson, Lafayette, for plaintiff-appellee.
Before DOUCET, LABORDE and BOND,[*] JJ.
DOUCET, Judge.
This appeal, arising out of a damage suit, presents primarily the issue of insurance coverage by two insurers.

FACTS
Arthur James Russo was employed by Howard Trucking Company as a swamper (laborer) on a gin-pole truck. Howard dispatched a gin-pole truck, with Lynwood Freemin as driver and Russo as swamper, to a job at the yard of Veran, Inc. in Parks, Louisiana. The job to be undertaken was to lift a "bull gear" out of a pump. The gear weighed approximately 26,000 pounds.
Veran, Inc. had previously hired Wilbur Granger and his company, Granger Engine and Rig Equipment Repair, to accomplish the removal. To accomplish the work it was necessary that Howard be retained to provide a 20 ton gin-pole.
The lift was to be made using a special clamp designed by Granger. Granger was responsible for positioning the clamp on the gear. Granger had general supervisory control over all persons involved in the lift.
During the lift the clamp failed and a piece of metal struck Russo in the head. Russo sued certain individuals, companies, and their insurers, for the damages he suffered as a result of the accident. Prior to trial, Russo accepted a $60,000.00 settlement of his claims. It was stipulated that the court would decide whose negligence caused the accident and which insurance policy or policies provided coverage for Russo's injuries.
The coverage questions presented to the trial court asked whether a policy of automobile liability insurance issued to Howard by United General Insurance Company (United) was applicable; further, the court was to decide if the gin-pole truck was excluded from coverage under a comprehensive general liability policy issued to Granger by National Union Fire Insurance Company (National) and whether a similar comprehensive general liability policy issued by United to Howard was applicable.[1]
The court found Russo's injuries were caused by the negligence of Granger, that Granger's comprehensive general liability policy from National provided coverage, and that the United automobile liability policy issued to Howard did not provide coverage. National appeals. We affirm.

ISSUES
The issues presented by this appeal are as follows:
(1) Whose negligence was the proximate cause of the accident;

*374 (2) If Granger's negligence caused the accident, was he covered by United's automobile liability policy issued to Howard; and
(3) If Granger's negligence caused the accident, was the gin-pole truck covered by National's comprehensive general liability policy?
1. Whose Negligence Was the Proximate Cause of the Accident?
The trial court, after reviewing the facts, reasoned as follows:
"The Court finds that the injury is a result of the negligence of Granger. Granger designed the clamp, placed the clamp on the pump shaft and instructed the employees of Howard Trucking when to pull on the hoist. The Howard employees merely followed Granger's orders. Granger, d/b/a Granger Engine and Rig Repair, had expertise in this field."
After a thorough review of the record, we cannot say the trial court was clearly wrong in its finding that Granger's negligence was the sole proximate cause of the accident. The trial court's factual finding on this point shall be affirmed.
2. Did United's Automobile Liability Policy, Issued to Howard, Provide Coverage For Granger?
National argues that Granger's negligence is covered by United's automobile liability policy because, at the time of the accident, Granger was "using" an "automobile."
United's automobile liability policy provides coverage for bodily injury arising out of the use of an "automobile." "Automobile" is defined in the policy as follows:

"`automobile' means a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto) but does not include mobile equipment."

Mobile equipment is defined in the policy, in pertinent part, as follows:
"`mobile equipment' means a land vehicle (including any machinery or apparatus attached thereto), whether or not self-propelled, ... (4) designed or maintained for sole purpose of affording mobility to equipment of the following types forming an integral part or permanently attached to such vehicle: power cranes...."
National argues the above definitions clearly indicate an intent, on the part of United, to undertake an "auto risk" arising from the use of "machinery or apparatus" attached to an automobile.
The policy provides that an "automobile" is a "land motor vehicle." The definition goes on to include any "trailer or semi-trailer designed for travel on public roads." The trailers, which will be considered "automobiles," are those designed for use on public roads and their definition is further expanded by the parenthetical as follows: "(including any machinery or apparatus attached thereto)." It is only the trailers, designed for use on public roads, with machinery or apparatus attached thereto, that are "automobiles."
The intent of the policy language, and the only reasonable interpretation of these definitions when taken together, is that "automobile" includes land motor vehicles and trailers designed for use on public roads, including those trailers with machinery attached, but not "mobile equipment." Further, "mobile equipment," as defined in the policy, is a land vehicle, which land vehicle would be an "automobile" but for the fact that it has machinery attached to it and the vehicle's sole purpose is to afford mobility to the, in this case, gin-pole or crane.
The gin-pole truck is not an "automobile" within the meaning of the United automobile liability policy issued to Howard. Thus, this policy provides no coverage for Granger. The trial court's decision in this regard is correct.
3. Was the Gin-pole Truck Excluded From National's Comprehensive General Liability Policy?
National's policy contains the same definitions of "automobile" and "mobile equipment" *375 as found in the automobile liability policy issued to Howard by United. However, in the National policy the import of the provisions is reversed. Where the United policy does not provide coverage because "mobile equipment" is specifically excluded, the same "mobile equipment" is not excluded in the National comprehensive general liability policy.
This court in Lucas v. Deville, 385 So.2d 804 (La.App. 3rd Cir.1979), writs denied 386 So.2d 357, 359 (La.1980), addressed a very similar factual situation. The trial court, in finding that National's policy provided coverage, recognized the applicability of Lucas to the instant case and said:
"In Lucas, the Court held that the winch truck was not an `automobile' within the exclusions section of the CGL insurance policy. Since the winch truck was not excluded as an auto, coverage was found. In arriving at this holding, the Court noted the Louisiana rule that favors coverage in cases of ambiguity.
However, the Court went on to say that even without the Louisiana strict construction rule, the winch truck was not an `automobile'. Lucas at 823-824.
The facts of the Lucas case are very similar to the case at bar. In both cases, the truck was off the highway ..., stationary, and its gears in a mode so locomotion was impossible. The truck was operating as a lifting device, not a vehicle. The language in the policy regarding the definition of `automobile' was exactly the same in Lucas and the case at bar...."
We agree with the trial court's reasoning and reliance on Lucas; the decision below in this regard shall be affirmed.[2]

CONCLUSION
The factual findings made below are supported by the record. The interpretation of the various contracts by the trial court is correct. The judgment of the trial court shall be affirmed.
For these reasons, the judgment of the trial court is affirmed. Appellant, National Insurance Company, shall pay the costs of this appeal.
AFFIRMED.
NOTES
[*] Honorable W. Ellis Bond, Judge of the Fourteenth Judicial District Court, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] United's comprehensive general liability policy would provide coverage for the negligence of Howard or its employees. Because Russo is an employee of Howard and is covered by workman's compensation, the exclusivity provisions of the workman's compensation law, LSA-R.S. 23:1032, preclude any tort suit based on allegations of negligence. The trial court found the immunity of R.S. 23:1032 applied and we agree. There is no need to consider this policy.
[2] This court is aware that Mouton v. Armco, Inc., 431 So.2d 776 (La.App. 3rd Cir.1983), which relied on Lucas, was reversed by the Supreme Court. See 434 So.2d 1106 (La.1983). However, we hasten to point out, Mouton involved the granting of summary judgment in favor of an automobile liability insurer; the appropriateness of the summary judgment was questioned by the Supreme Court and reversed. In Lucas, and the instant case, the decision of the trial court is based on findings made after a trial on the merits. There are no later reported cases arising from Mouton. The reversal of a summary judgment can hardly stand for the proposition that the findings made after a trial on the merits are incorrect, even when similar factual circumstances are involved.