601 So.2d 769 (1992)
Mrs. Debra WILLIAMS, Individually and as Legal Tutrix of Her Minor Children
v.
Mr. Steven J. GALLIANO, Galliano Contractors, Inc., Scottsdale Insurance Company, Terrebonne Parish Consolidated Government, American Empire Surplus Lines Insurance, Mack Truck Manufacturing Company, et als.
No. CA 91 1657.
Court of Appeal of Louisiana, First Circuit.
May 22, 1992.
Writ Denied October 2, 1992.
Dr. E.A. Robinson, III, Baton Rouge, for plaintiff and appellant, Debra Williams.
Charles Lanier, New Orleans, L.G. LaPlante, Cutoff, for defendant and appellees, Galliana Contractors and Steven Galliano.
Maurice Mathieu, Houma, for defendant and appellee, Scottsdale Ins. Co.
Before WATKINS, CARTER and FOIL, JJ.
FOIL, Judge.
This is an appeal from the trial court's ruling which granted summary judgment in favor of defendant, Scottsdale Insurance *770 Company, and denied plaintiff's motion for summary judgment. We affirm.

FACTS
Charles Williams, Jr. was employed by Waste Management Company. On July 30, 1990, he went to the Ashland Landfill to unload his garbage truck. After he dumped the refuse, while he was outside of the truck operating the control arms to close the tailgate, a twenty-ton Mack truck reversed toward him to dump its load. Mr. Williams died from head injuries he received when he was pinned between the two trucks. The Mack truck was owned by Galliano Contractors, Inc., and was driven by the company's president, Steven J. Galliano.
Mr. Williams' widow, Debra Williams, individually and as tutrix of their minor children, filed these wrongful death and survival actions. Among others, Mrs. Williams filed suit against Mr. Galliano, Galliano Contractors, Inc. (Galliano), and its comprehensive general liability (CGL) carrier, Scottsdale Insurance Company (Scottsdale). She subsequently filed a motion for partial summary judgment on the issue of liability against those three defendants. Scottsdale then filed a motion for summary judgment on the grounds that the CGL policy issued to Galliano excluded coverage for bodily injury arising out of the ownership, maintenance or use of any automobile owned or operated by any insured. Mrs. Williams argued, on the other hand, that the Galliano garbage truck was "mobile equipment," which was excluded from the definition of "automobile" in the Scottsdale CGL policy.
After a hearing, the trial court granted Scottsdale's motion for summary judgment and denied plaintiff's motion. In very lengthy and thorough written reasons for judgment, the court found that the Mack garbage truck was an "automobile" rather than "mobile equipment" under the terms of the CGL policy and that Mr. Williams' death arose out of the use of that vehicle. As such, coverage was excluded. Plaintiff brings the instant appeal from that ruling.
After a thorough review and evaluation of the record, we are convinced the reasons assigned by the trial court are correct, and we affirm, adopting those reasons as our own, and attach a copy hereto. All costs are to be paid by plaintiff/appellant, Debra Williams.
AFFIRMED.

Mrs. Debra Williams, Individually, and as Legal Tutrix of Her Minor Children, Et Al.

Versus No. 98,839

Mr. Steven J. Galliano, Et Al. 32nd Judicial District Court State of Louisiana Parish of Terrebonne

REASONS FOR JUDGMENT ON MOTIONS FOR SUMMARY JUDGMENT
This matter came before the court on cross motions for summary judgment on the issue of insurance coverage under a comprehensive general liability insurance policy issued by Scottsdale Insurance Company to Galliano Contractors, Inc. Plaintiff, Debra Williams seeks a partial summary judgment on the issue of liability. Scottsdale Insurance Company seeks a summary judgment dismissing it from the case on the basis that its policy does not afford coverage.
This is a wrongful death suit arising out of an accident which occurred at Ashland landfill when Steven Galliano, operating a garbage truck for Galliano Contractors, Inc., backed into a Waste Management Company garbage truck, pinning the decedent between the two trucks.
Galliano Contractors, Inc. was insured under a CGL policy issued by Scottsdale Insurance Company. The CGL policy excluded coverage for bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of any automobile operated by or rented or loaned to any insured. The policy defined automobile as follows:

*771 ... "automobile" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto), but does not include mobile equipment;...
Since mobile equipment is not excluded from coverage under the policy, the first issue raised by the cross motions is whether the garbage truck operated by Steven Galliano falls within the definition of mobile equipment which is as follows:
... "mobile equipment" means a land vehicle (including any machinery or apparatus attached thereto), whether or not self-propelled, (1) not subject to motor vehicle registration, or (2) maintained for use exclusively on premises owned by or rented to the named insured, including the ways immediately adjoining, or (3) designed for use principally off public roads, or (4) designed or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle: power cranes, shovels, loaders, diggers and drills; concrete mixers (other than the mix-in-transit type); graders, scrapers, rollers and other road construction or repair equipment; air-compressors, pumps and generators, including spraying, welding and building cleaning equipment; and geophysical exploration and well servicing equipment; ...
The garbage truck does not meet subsection 1, 2, or 3. Subsection 4 is the part of the definition of mobile equipment that plaintiff contends is met in this case. The second issue presented is whether the injury arose out of the ownership, maintenance, operation, use, loading or unloading of the truck if it is classified as an automobile.
The sole business of Galliano Contractors, Inc. was hauling large containers of garbage from commercial businesses to various public dump sites. Galliano Contractors, Inc. owned and operated two roll off trucks which were used exclusively in the garbage collection business. Galliano Contractors, Inc. would deliver an empty container to a customer, pick up a full one and transport it to a dump site where the garbage would be discarded. The truck in question was a three axle, ten wheel truck which was registered with the Louisiana Department of Motor Vehicle Registration as a truck weighing 40,000 lbs. The truck was equipped with a boom and winch permanently attached to it. This equipment was used to roll the containers on and off the truck and to dump the garbage.
The Louisiana Supreme Court has not issued any definitive guidelines for interpreting the "mobile equipment" definition in CGL policies. The parties have exhaustively discussed the jurisprudence on this issue which is confined to the lower appellate courts, particularly the Third Circuit Court of Appeal. Only one case in this area, Sherville v. National Union Fire Ins. Co., 387 So.2d 1181 (La.App. 1 Cir. 1980), was decided by the First Circuit. Although the parties have basically cited the same cases, they differ greatly as to the significance each decision has to the facts of this case.
The key to understanding the impact of the various cases is to pay particular attention to the manner in which the vehicle was being used in each case. Analyzing the coverage issue requires a two step process. First, it must be determined whether the vehicle in question is an automobile or mobile equipment. If it is found to be an automobile, the second step must be encountered. It must be decided whether the accident arose out of its ownership, maintenance, operation, use, loading or unloading. The distinction between the two steps in the process of determining the coverage issue can be blurred if the cases are not read in the context of their particular facts.
One category within the jurisprudence deals with accidents which occur when the vehicle is stationary and performing some operation with the equipment. Since no transportation or locomotion of the vehicle is involved and the equipment is performing an operation usually associated with the type of risk which a CGL policy is designed to cover, the courts have gone to great lengths to construe coverage broadly.
*772 Lucas v. Deville, 385 So.2d 804 (La.App. 3 Cir.1979), writs denied 386 So.2d 357, 359 (1980), involved a gin pole truck which was used in an off road stationary position to turn over a large cement hopper. A cable was attached from one side of the hopper to the gin pole truck. The gin pole truck was to gradually let down the hopper as it was pulled over from the other side by another gin pole truck. As the hopper was tipped over, the gin pole truck which the plaintiff was operating was tipped up on its back wheels. The cable disengaged or broke and the truck dropped back into its normal position. The force of the truck's dropping injured the plaintiff. The court found that a restrictive interpretation of the mobile equipment definition in the policy was inappropriate in the context of a vehicle which had departed from its transportation or locomotion role and was performing functions independent of that purpose. The court emphasized that the gin pole truck was being used in an off road, non locomotive situation. The Lucas court analogized the gin pole truck to a mobile crane.
Russo v. Veran, Inc., 488 So.2d 372 (La. App. 3 Cir.1986), likewise held that a gin pole truck was not an automobile within a CGL policy. Relying on Lucas, the court held:
The facts of the Lucas case are very similar to the case at bar. In both cases, the truck was off the highway ..., stationary, and its gears in a mode so locomotion was impossible. The truck was operating as a lifting device, not a vehicle. 488 So.2d 372 at 375.
Other courts dealing with this coverage issue based their decision on a finding that the accident did not arise out of the use of an automobile or that there was some negligence independent of and not concurring with the use of the vehicle. The First Circuit's decision in Sherville, supra, falls within this category. In Sherville, the insured was operating a winch truck to load aluminum beams or duct work onto a float. After the insured lifted a beam with the winch, the beam fell, killing the insured's father who had walked under the beam. Plaintiffs alleged that the insured had improperly secured the winch hook to the beam, failed to warn his father and/or failed to see him. The trial court, finding no coverage, granted a summary judgment to the insured's CGL carrier. The First Circuit reversed the trial court and found that the phrase "arising out of an automobile" in the policy was ambiguous. The court's opinion does not indicate whether the CGL policy contained a definition of automobile which excluded those vehicles classified as mobile equipment. The court based its decision on the ambiguity it found in the terms "arising out of the use of an automobile". It cited LeJeune v. Allstate Insurance Co., 365 So.2d 471 (La. 1978), a Louisiana Supreme Court decision dealing with the "arising out of" aspect of coverage (the second step in the two step analysis for coverage). The Sherville court found that the insured's negligence was independent of and not even concurring with his use of the winch truck as a motor vehicle. Rather, it was the insured's use of the truck as a winch which led to possible liability. If the policy contained a definition of mobile equipment as a category of vehicles not included within the definition of an automobile, the court did not use that provision to find coverage. Since it is unclear whether there was a mobile equipment definition in the policy and because the Sherville decision was really based on the "arising out of" aspect of coverage, Sherville has limited applicability to the question of whether the garbage truck should be classified as mobile equipment.
All of the jurisprudence discussed above involved instances where the truck mounted equipment was being used at the time of the accident. In the case at bar, the equipment was not in use. Mr. Galliano was backing the truck in preparation to dump the garbage. Although this was an off road setting, the use or maintenance of the truck as a vehicle was the activity giving rise to possible liability (whether it was due to Steven Galliano's alleged negligent driving and/or the alleged failure of Galliano Contractors, Inc. to maintain the truck in a safe condition because it lacked an audible back up warning device). The truck was *773 not being used as a crane at the time of the accident. The court cannot conclude that the truck had departed from its transportation or locomotion role. Therefore, the jurisprudence relying on the transportation or locomotion distinction made in Sparkman v. Highway Insurance Company, 266 F.Supp. 197 (W.D.La.1967) does not dictate a finding of coverage in this case. Although the Galliano truck was engaged in a transportation or locomotion function at the time of the accident, the jurisprudence recognizing such a distinction, while not supporting coverage, does not foreclose it either. The CGL policy in question expressly provides coverage for mobile equipment while engaged in a transportation function. A vehicle clearly falling within the definition of those listed in Subsection 4 of the mobile equipment definition would be covered for a wreck which occurred while travelling on the public roads on the way to a job site. Since mobile equipment is excluded from the definition of automobile, the policy does cover vehicles which can meet the definition of mobile equipment for risks normally associated with automobile liability insurance.
The first question in this case is simply whether the garbage truck falls within the classification of mobile equipment contained in Subsection 4 of that definition. Since the winch and boom are permanently attached to the truck, the real issues within the Subsection 4 definition of mobile equipment are:
1) Whether the truck is designed or maintained for the sole purpose of affording mobility to the winch and boom, and
2) Whether the winch and boom can be considered equipment of the same type as power cranes, shovels, loaders, diggers and drills; concrete mixers (other than the mix-in-transit type); graders, scrapers, rollers and other road construction or repair equipment; air-compressors, pumps and generators, including spraying, welding and building cleaning equipment; and geophysical exploration and well servicing equipment.
While interpreting the definition of mobile equipment, the court must be mindful of the jurisprudential rule that an exclusion clause in a liability policy is strictly construed against the insurer and in favor of coverage if more than one interpretation is possible. LeJeune, supra.
Plaintiff contends that the boom and winch apparatus can be likened to a power crane, one of the types of equipment listed in Subsection 4. Since the policy contains no language explicitly describing what type of apparatus can be considered a power crane, the court finds that a reasonable interpretation of power crane could include the boom and winch apparatus on the garbage truck which performed essentially the same function as would a power crane. The most difficult obstacle to the truck's meeting the definition of mobile equipment is the requirement that the vehicle be designed or maintained for the sole purpose of affording mobility to the types of equipment listed in Subsection 4. The evidence clearly establishes that the garbage truck did provide mobility to the winch and boom. Since the equipment was permanently attached to the truck and went wherever the truck went, it cannot be argued otherwise. However, the policy provides that affording mobility to the equipment must be the sole purpose for which the truck was designed or maintained. The crux of the coverage issue in this case is the interpretation of the "sole purpose" requirement.
Only one case has specifically considered the "sole purpose" requirement. In Doty v. Safeco Insurance Company, 400 So.2d 718 (La.App. 3 Cir.1981), a pick up truck which had welding equipment bolted to its bed which was used in connection with a welding business was involved in an accident while being driven by the business owner's son who was returning home from a disco at 3:00 a.m. The evidence established that the welding business was operated with two welding rigs, both installed in pick up trucks. The welding was all done on-site which required the welding equipment to be transported to the various job sites. Nothing else could be put into *774 the bed of the pickup which had the welding equipment installed on it. Aside from the business use to which the truck was applied, the truck was used by the 17 year old son to go to and from school and for personal errands. The CGL carrier contested coverage arguing that, since the truck was put to personal use, it was not designed or maintained for the sole purpose of affording mobility to the welding equipment. The court, distinguishing the word "use" from the words "designed or maintained", found that, since Subsection 4 of the mobile equipment definition did not refer to the vehicle's use as did Subsection 2 and 3, but contained the words "designed or maintained", the fact that the truck was "used" for personal convenience was not relevant in determining whether the vehicle was mobile equipment. The court ascribed to the terms "designed or maintained" a meaning equivalent to "structurally or functionally" suited.
The evidence reveals that the garbage trucks used in Galliano Contractors' business were always operated with a container and the winch and boom were always used in the garbage collection business. It is indisputable that the winch and boom were essential to performing the job of picking up and dumping the containers. The court has no doubt that the job could not have been performed without the winch and boom. However, it is also evident that the garbage truck carried out another function besides merely providing mobility to the equipment. The truck was used to transport the containers to and from the dump sites. Essentially, the winch and boom were used to load and unload the garbage truck. The truck's primary purpose was to transport the garbage even though, technically, it could be said that the truck also provided mobility to the winch and boom. Since the truck provided transportation to the garbage in addition to the equipment, the court must determine whether the "sole purpose" requirement in the definition of mobile equipment can be reasonably interpreted to defeat coverage. Although the policy refers to "sole purpose", the court cannot conclude that a reasonable interpretation of the words "sole purpose" would include any other conceivable purpose however incidental or remotely possible. However, in this case, the function of hauling the garbage containers can not be viewed as incidental or remote. Steven Galliano and Galliano Contractors, who filed a memo in opposition to Scottsdale's motion, present a seemingly attractive argument for coverage, contending that Galliano Contractors maintained the truck for the sole purpose of affording mobility to the winch and boom located on the truck and to the garbage containers which formed an integral part of the vehicle. They point out that the truck was always operated with a container on it. Although they refer to the containers as forming an integral part of the truck, the containers can in no way be reasonably likened to any of the equipment listed in Subsection 4. Therefore, regardless whether the containers form an integral part of the truck, they do not in any way support a finding that the truck is mobile equipment. On the contrary, the fact that the truck functioned as a means of transport for the containers serves to undermine rather than support the logic in any argument for coverage. Even under the interpretation of "designed or maintained" given by the Third Circuit in Doty v. Safeco, supra, this court would have to conclude that the garbage truck was structurally or functionally suited for the purpose of transporting the containers just as well as providing mobility to the equipment. To conclude that the truck fits the definition of mobile equipment would, in the court's opinion, stretch the policy's language unreasonably. Therefore, the court finds that the garbage truck was an automobile within the policy terms.
Having concluded that the garbage truck was an automobile rather than mobile equipment, the court must consider the second step in the process of deciding the coverage issue. Even though the garbage truck was an automobile, the policy exclusion only applies where the injury arises out of the ownership, maintenance, use, loading or unloading of an automobile.
The evidence reveals no basis for liability of Steven Galliano or Galliano Contractors, *775 Inc. independent of and not concurring with the ownership, maintenance, use, loading or unloading of the truck as an automobile. Steven Galliano was not operating any of the truck's equipment at the time of the accident. It was his actual operation of the truck which formed the basis of potential liability. Any liability of Galliano Contractors, Inc. for failing to equip the truck with an audible back up warning is directly related to the ownership or maintenance of the truck. Since the truck was not being used as a crane at the time of the accident, the court can not use the Sherville case as support for a finding of coverage. In any event, it should be noted that the Sherville court's application of the "arising out of the use of an automobile" language has been the subject of some criticism in that it failed to recognize that the exclusion is not limited to operation of a motor vehicle but also includes use, loading and unloading. See McKenzie and Johnson, Insurance (15 La. Civil Law Treatise) § 67 (fn. 49). The viability of the Sherville case as authority for future applications in the context of "arising out of" cases has also been called into question by the Louisiana Supreme Court in Carter v. City Parish Government of East Baton Rouge, 423 So.2d 1080 (La.1982) which, although not specifically addressing the ultimate conclusion made by the Sherville court, disapproved of the method of analysis the court employed.
Since the court has concluded that the garbage truck was an automobile rather than mobile equipment, and that the ownership, maintenance, use, loading or unloading of an automobile was an essential ingredient of any duty which Steven Galliano or Galliano Contractors, Inc. may have breached in this case, the court must find that the CGL policy issued by Scottsdale Insurance Company does not provide coverage. Therefore, the motion for summary judgment filed by Scottsdale Insurance Company should be granted and the plaintiff's motion should be denied.
Houma, Louisiana, on this the 1st day of May, 1991.
 /s/Timothy C. Ellender
 JUDGE