736 So.2d 256 (1999)
AMERICAS INSURANCE COMPANY, Plaintiff-Appellant,
v.
RELIANCE INSURANCE COMPANY, Defendant-Appellee.
No. 98-1008.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1999.
Lawrence J. Ernst, New Orleans, for Americas Insurance Company.
Al M. Thompson Jr., New Orleans, for Reliance Insurance Company.
Before: DOUCET, C.J., DECUIR, and PETERS, JJ.
DOUCET, Chief Judge.
Americas Insurance Company (Americas) is the general liability insurer of Rig Tools, Inc. Reliance Insurance Company (Reliance) is the commercial automobile insurer of Rig Tools, Inc. Americas appeals a judgment of the district court dismissing its suit against Reliance seeking to recover defense expenses it expended on *257 behalf of Rig Tools by having Reliance named the primary insurer of Rig Tools in the action filed against Rig Tools by Alfred Williams.

FACTS
The facts in the case sub judice are succinctly set out by the trial judge in his reasons for judgment:
This Petition for Declaratory Judgment was filed by Americas Insurance Company, (hereafter referred to as "Americas"), against Reliance Insurance Company, (hereafter referred to as "Reliance"), on May 30, 1997. Americas alleged that it had issued a comprehensive general liability ("CGL") policy to Rig Tools, Inc. with a policy period of 10/31/90-10/31/91. Reliance Insurance Company had issued a policy of commercial automobile liability insurance to the same insured, namely Rig Tools, Inc. with a policy period of 10/31/90-10/31/91.
In a separate lawsuit filed in this district under Docket No. 74536 of Iberia Parish, by Alfred Williams, Rig Tools, Inc. was made a defendant in a personal injury claim when a 1990 Herring "Frac" tank trailer (No. 1773), owned by Rig Tools, Inc. exploded on January 12, 1991. [The 500 barrel "frac" tank was leased by Morton Salt Company from Stamm-Schelle, who acquired use of the tank from Baker Hughes Treatment Systems, who had acquired use of the tank from Rig Tools. At the time of the accident, Alfred Williams was acting in the course and scope of his employment as a "slurry puller" with Morton Salt.] Rig Tools, Inc. called upon Americas to defend and indemnify it pursuant to the CGL policy. Americas provided a defense to Rig Tools, Inc. pursuant to their policy which culminated in a dismissal of Rig Tools, Inc. pursuant to a Motion for Summary Judgment. The Judgment dismissing Rig Tools, Inc. was rendered on August 28, 1997. Americas has paid a total of $69,038.10 in defense costs on behalf of Rig Tools, Inc. in that litigation and seeks to recover this amount from Reliance contending that the coverage provided by Reliance was primary to its coverage and that under the terms of the Reliance policy, Reliance was primarily responsible for all defense fees in connection with the defense of Rig Tools, Inc. in the Alfred Williams matter. The following stipulations were reached by the parties:
1. Alfred Williams filed suit against Rig Tools, Inc. on December 27, 1991, seeking damages for injuries sustained in an accident of January 12, 1991. Williams alleged that he sustained injury when a 1990 Herring Frac Tank Trailer No. 1773, which was owned by Rig Tools, Inc., exploded. Exhibit A is a true, accurate and authentic copy of the Alfred Williams' original Petition.
2. Herring Frac Tank Trailer No. 1773 was purchased new by Rig Tools, Inc. on or about January 1, 1991, and the frac tank trailer was owned by Rig Tools, Inc. on January 12, 1991.
3. Rig Tools, Inc. tendered the defense of the Alfred Williams case to its CGL carrier, Americas Insurance Company. Americas Insurance Company undertook the defense and has paid $69,038.10 in defense costs on behalf of Rig Tools, Inc.
4. Rig Tools, Inc. was dismissed from Alfred Williams' lawsuit on a Motion for Summary Judgment rendered on or about August 28, 1997. That judgment is now final.
5. Exhibit B is a true, accurate and authentic copy of Americas Insurance Company policy No. 25938. This CGL policy listed Rig Tools, Inc. as a named insured and the policy was in full force and effect of January 12, 1991.
6. Exhibit C is a true, accurate and authentic copy of Reliance Insurance Company policy No. QB 8254155 50. This commercial automobile policy listed Rig Tools, Inc. as a named insured, and the policy was in full force and effect on January 12, 1991.
7. Herring Frac Tank Trailer No. 1773 is a commercial trailer designed for *258 transport on public highways but was not being used on public highways at the time of the accident.
8. Exhibit D is a true, accurate and authentic copy of the Certificate of Title for the Herring Frac Tank Trailer No. 1773 which is maintained with the Louisiana Department of Public Safety Office of Motor Vehicles.
9. Exhibit E is a true, accurate and authentic copy of the Certificate of Registration for the Herring Frac Tank Trailer No. 1773 which is maintained with the Louisiana Department of Public Safety-Office of Motor Vehicles.
10. At the time of the accident, Rig Tools, Inc. was required to and actually did obtain a license plate for the Herring Frac Tank Trailer No. 1773.
11. Herring Frac Tank Trailer No. 1773 was not connected to a motor vehicle at the time it exploded.

ACTION BY THE TRIAL COURT
Based upon the foregoing stipulations and the terms of the respective policies, the trial court identified two issues: 1) whether insurance on the Frac trailer in question was provided by the automobile liability policy issued by Reliance Insurance Company, i.e. was the Frac tank an automobile within the terms of the policy and 2) if the Frac trailer is found to be a covered vehicle under the terms of the Reliance policy, did the accident arise out of the ownership, maintenance or use of the vehicle.
The trial court reached the following conclusions:
The Reliance policy contained an endorsement dated January 1, 1991 adding the 1990 Frac Trailer in question to the policy. The language provides: "It is understood and agreed that the following auto is hereby added to the policy. Auto # 44-1990 Frac Trailer S# 1773." The policy issued by Reliance defines auto as "a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But auto does not include mobile equipment." Mobile Equipment is defined as a list of certain types of vehicles (the frac trailer would fall under this definition). Normally, this trailer would be excluded from coverage under the provisions of the policy, however, in this case, Reliance specifically issued an endorsement wherein it acknowledged the frac tank trailer was a covered auto. As such, this Court finds that the frac tank trailer was a covered auto within the definition of the policy.
The second issue has to do with the liability provisions of the policy issued by Reliance[, i.e., was there coverage u]nder Section II-Liability Coverage, and whether the accident arose from the ownership, maintenance and use of a covered auto. The policy provides:
A. COVERAGE
We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance and use of a covered "auto". (emphasis supplied).

In Williams v. Galliano 601 So.2d 769 (La.App.1stCir.1992), the court discussed this dual issue, namely 1) whether the vehicle was an automobile or mobile equipment and 2) if it was an automobile, whether the accident arose out of its ownership [operation, maintenance, or use]. The court stated:
One category within the jurisprudence deals with accidents which occur when the vehicle is stationary and performing some operation with the equipment. Since no transportation or locomotion of the vehicle is involved and the equipment is performing an operation usually associated with the type of risk which a CGL policy is designed to cover, the courts have gone to great lengths to construe coverage broadly. Williams, supra at p. 771.
In Lucas v. Deville, 385 So.2d 904[804] (La.App. 3rd Cir.1979), a ginpole truck was being used in an off-road stationary position to turn over a large *259 cement hopper. The plaintiff was injured when a cable attached to the hopper which the gin-pole truck was moving snapped tipping the truck on its back wheels and injuring the driver when the truck returned to its normal position. The Court found that a restrictive interpretation of the mobile equipment definition was inappropriate in the context of a vehicle which had departed from its transportation or locomotion role and was performing functions independent of that purpose. The court emphasized that the gin pole truck was being used in an off road, non locomotive situation. The court analogized the gin pole truck to a mobile crane.
In Russo v. Veran, Inc., 488 So.2d 372 (La.App.1986) the court again held that a gin pole truck was not an automobile within the context of a CGL policy. In the Williams case, the court noted that the facts were very similar in that the truck in question was off the highway, stationary, and its gears in a mode so locomotion was impossible. The truck was backing in preparation to dump the garbage at the time of the accident. However in that case, the court found that the garbage truck was an automobile and was acting in that capacity at the time of the accident.
In the situation at hand, the frac trailer was not self propelled, it was a trailer. It was leased to Baker Hughes and was being used in connection with drilling operations when an explosion allegedly occurred in the tank. At the time of the accident, the trailer was not in transit and was not moving on any public highway nor was it hooked to any other vehicle. Defendant contends that the sole purpose of the Frac tank trailer was to provide mobility to the frac tank placed upon it.
The Court believes that this issue goes to whether the accident occurred out of the ownership, maintenance and use of the vehicle. At the time that this accident occurred the vehicle was not in locomotion. Its sole purpose was to service the well that was being drilled. In looking at the traditional roles of the CGL and auto liability policies, this court finds that at the time of the accident, the liability of Rig Tools, Inc. if any were established, would not have arisen from the ownership, maintenance and use of the vehicle. The liability if established would have fallen within the purview of those bases of liability which are generally inherent in a comprehensive general liability policy rather than an automobile policy. The frac tank at the time was performing a function independent of a locomotion role.
In view thereof, the Court finds in favor of Reliance Insurance Company dismissing the demands of Americas Insurance Company with prejudice at Plaintiffs costs....

LAW AND DISCUSSION
The standard of review applied by an appellate court is well settled:
A court of appeal may not set aside a trial court's or a jury's finding of fact in absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840 (La.1989); Stobart v. State, Through DOTD, 617 So.2d 880 (La. 1993). The appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one, after reviewing the record in its entirety. Mart v. Hill, 505 So.2d 1120 (La. 1987); Rosell, 549 So.2d 840; Stobart, 617 So.2d 880. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Tubre v. State, Dept. of Transp. and Development, 96-1194, p. 3 (La.App. 3 Cir. 4/2/97); 693 So.2d 1190, 1192, writs denied, 97-1913 and 97-1916 (La.11/21/97); 703 So.2d 1307.
In the case sub judice, the "frac" trailer was specifically listed on the Reliance policy *260 as a covered auto. Appellant would have us end our analysis of the case at that point. However, it is well settled that:
An insurer may limit its liability where such limitation is clearly set forth and the limitation does not violate public policy. Francis v. U.S. Fidelity & Guar. Co., 94-721 (La.App. 3 Cir. 3/8/95), 653 So.2d 45, writ denied, 95-1305 (La.9/15/95), 660 So.2d 459. An insurance policy is a contract between the parties and should be interpreted by using the general rules of construction. Smith v. Matthews, 611 So.2d 1377 (La. 1993). "Interpretation of a contract is the determination of the common intent of the parties." La.Civ.Code art.2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.Civ.Code art.2046. An ambiguous provision of a contract must be interpreted against the party who furnished the provision. La.Civ.Code art.2056. "[C]ourts have no authority to change or alter its (the contract's) terms under the guise of interpretation." Radar v. Duke Transportation Inc., 492 So.2d 532, 534 (La.App. 3 Cir.1986).
Mike Hooks, Ins. v. JACO Services, Inc., 95-1485, p. 3 (La.App. 3 Cir. 5/8/96); 674 So.2d 1125, 1126. Reliance's policy defines "Auto" as a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But auto does not include "mobile equipment." Since the Reliance policy provided coverage for autos only in the case of an accident "resulting from the ownership, maintenance or use of a covered `auto,'" it was proper for the trial court to, after it had determined the "frac" trailer was an auto, look further to see if the accident arose out of the auto's "ownership, maintenance or use." That inquiry looked to the function of the trailer at the time of the accident. From the record it appears that the "frac" trailer was a trailer with a large (500 barrel) tank attached. It was stipulated that the trailer was neither being used on the highway nor connected to a motor vehicle at the time of the accident. Further, it had not been recently transported to the site of the accident to be either loaded or unloaded. Its function at the accident site was more akin to a storage tank than to a mobile trailer.
This court has consistently held that when "automobiles" covered under automobile liability policies are not being used for locomotion or transport purposes, but rather for purposes usually associated with the type of risks normally covered by a CGL policy, the CGL policy will provide coverage. See Russo v. Veran, 488 So.2d 372 (La.App. 3 Cir.1986) and Lucas v. Deville, 385 So.2d 804 (La.App. 3 Cir. 1979); writs denied, 386 So.2d 357, 359 (La.1980) relied upon by the trial court.
Accordingly, we find no manifest error by the trial court. The judgment appealed from is affirmed. All costs of this appeal are assessed to Appellant, Americas Insurance Company.
AFFIRMED.