# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 23-358


**SIDNEY RUBIN, JR., ET AL.**

**VERSUS**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE**

**COMPANY, ET AL.**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 87553
HONORABLE VINCENT JOSEPH BORNE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**D. KENT SAVOIE**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of D. Kent Savoie, Ledricka J. Thierry, and Guy E. Bradberry, Judges.


**AFFIRMED.**

**Julius Willis Grubbs, Jr.**
**Haik, Minvielle & Grubbs**
**1017 E. Dale Street**
**New Iberia, La 70562-1040**
**(337) 365-5486**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Lafayette Surgical Hospital, LLC**

**Ian A. Macdonald**
**Jones Walker LLP**
**600 Jefferson St., Suite 1600**
**Lafayette, LA 70501**
**(337) 593-7600**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Progressive Paloverde Insurance Company**

**Mark G. Artall**
**109 South College Road**
**Lafayette, LA 70503**
**(337) 233-1777**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
**Sidney Rubin, Jr.**
**Katie Rubin**

**William Compton Helm**
**Kinchen, Walker, Bienvenu**
**9456 Jefferson, Bldg 3, Ste F**
**Baton Rouge, LA 70809**
**(225) 923-7844**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**P.L.Z. Trucking, LLC**

**Steven Brian Perry**
**Allen & Gooch**
**2000 Kaliste Saloom Rd, #400**
**Lafayette, LA 70598**
**(337) 291-1410**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**DG Construction and Hauling, LLC**

**Thomas Richard Temple, Jr.**
**Breazeale, Sachse & Wilson**
**301 Main St, # 2300**
**Baton Rouge, LA 70801**
**(225) 381-8024**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**James Construction Group, LLC**

**SAVOIE, Judge.**

In this auto accident case, Plaintiffs, Sidney Rubin, Jr. and Katie Rubin, appeal a summary judgment rendered in favor of Progressive Paloverde Insurance Company ("Progressive"). For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

On December 26, 2018, Sidney Rubin Jr. ("Rubin") and his wife Katie (collectively, "Plaintiffs") filed a Petition for Damages seeking relief for injuries sustained in connection with an auto accident. Specifically, Plaintiffs alleged that on July 19, 2018, Rubin was driving a 1988 Peterbilt dump truck in an easterly direction in the left-hand lane of travel on Interstate 10 ("I-10") in St. Martin Parish. At the same time, a 2017 Chevrolet Traverse driven by Mason Ortego ("Ortego") was travelling eastbound on I-10, directly behind Rubin. As Rubin slowed to enter a construction worksite in the median of I-10, which was part of an ongoing I-10 improvement project, the Traverse struck the rear of the dump truck. According to Plaintiffs, the force of the impact caused the dump truck to strike a concrete barrier, and Rubin sustained severe injuries. The accident happened at approximately 10:30 a.m. on a clear, sunny day.

Plaintiffs named multiple parties as Defendants, including P.L.Z. Trucking, LLC ("PLZ"), who was the owner of the dump truck that Rubin was driving. PLZ was a subcontractor in connection with the I-10 improvement project and provided dump trucks for the hauling of construction materials. PLZ, in turn, subcontracted with Rubin as a commercial truck driver and independent contractor to drive its dump truck and haul dirt and debris from the construction site.

Plaintiffs asserted various negligence claims against PLZ, including claims arising out of PLZ's alleged failure to place proper warning signs on the rear of its

dump truck that Rubin was driving. Plaintiffs also named PLZ's insurer, Progressive, as a Defendant.

Progressive issued a commercial auto insurance policy to PLZ that was in effect at the time of the accident ("the policy"). The policy provides, in pertinent part, as follows:

> **INSURING AGREEMENT – LIABILITY TO OTHERS**
>
> Subject to the Limits of Liability, if **you** pay the premium for liability coverage for the **insured auto** involved, we will pay damages, other than punitive or exemplary damages, for **bodily injury**, **property damage**, and **covered pollution cost or expense**, for which an **insured** becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of that **insured auto**.

On May 7, 2021, Progressive filed a Motion for Summary Judgment seeking the dismissal of Plaintiffs' claims against it. Progressive argued that coverage was not available because PLZ did not breach any duty to Rubin that would result in liability covered by the policy and/or because Plaintiffs' claims did not arise out of the ownership, maintenance, or use of the dump truck Rubin was driving.

Following a hearing held December 7, 2022, the trial court signed a judgment on January 4, 2023, granting Progressive's motion and dismissing Plaintiffs' claims against it. Plaintiffs appeal and assert the following as assignments of error:

1. The Trial Court erred in granting PROGRESSIVE'S Motion for Summary Judgment, finding that neither [La.Civ.Code art.] 2315 nor [La.R.S.] 32:377 applies to establish a duty on the part of P.L.Z. to affix warning devices onto the rear of its dump trucks under the circumstances under which those dump trucks were being used when the subject accident occurred.

2. The Trial Court erred in granting PROGRESSIVE'S Motion for Summary Judgment, finding that there was no duty on the part of P.L.Z. to affix a warning device onto the rear of its truck when uncontested facts indicate that the placement of a sign onto the rear

2

of the dump truck in question was not only the responsibility of P.L.Z. but also would have prevented the accident.

3. The Trial Court erred in granting PROGRESSIVE'S Motion for Summary Judgment finding that the PROGRESSIVE policy in question does not provide coverage for the failure of P.L.Z. to affix warning signs to the rear of vehicles because this activity did not arise out of the ownership, maintenance[,] or use of the vehicle in question.

## ANALYSIS

A summary judgment is reviewed on appeal *de novo*, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; *i.e.* whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law.

*Samaha v. Rau*, 07-1726, pp. 3–4 (La. 2/26/08), 977 So.2d 880, 882.

"[A] motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law."

La.Code Civ.P. art. 966(A)(3).

The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

La.Code Civ.P. art. 966(D)(1).

At issue are Plaintiffs' negligence claims against PLZ and whether any liability for those claims is covered by Progressive's policy issued to PLZ.

Louisiana courts have adopted a duty-risk analysis in determining whether liability exists under the facts of a particular case. Under this analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct

3

to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages.

*Bufkin v. Felipe's Louisiana, LLC*, 14-288, pp. 4–5 (La. 10/15/14), 171 So.3d 851, 855.

In connection with their first two assignments of error, Plaintiffs argue that the trial court erred in failing to find that PLZ owed a duty to Rubin, an independent contractor and driver of PLZ's truck, to place appropriate warning devices or warning signs onto the rear of the dump truck Rubin was driving.[1]

A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty. Whether a duty is owed is a question of law. In deciding whether to impose a duty in a particular case, the court must make a policy decision in light of the unique facts and circumstances presented. The inquiry is whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty.

*Lemann v. Essen Lane Daiquiris, Inc.*, 05-1095, p. 8 (La. 3/10/06), 923 So.2d 627, 633 (internal citations omitted). The issue of duty may be resolved by summary judgment "when it is clear no duty exists as a matter of law; and, the facts or credibility of the witnesses are not in dispute." *Parish v. L.M. Daigle Oil Co.*, 98-1716, pp. 2–3 (La.App. 3 Cir. 7/23/99), 742 So.2d 18, 20.

Plaintiffs first suggest on appeal that La.R.S. 32:377 imposed a statutory duty on PLZ to install a slow-moving vehicle emblem on the truck Rubin drove. Louisiana Revised Statutes 32:377 states, in part:

---

[1] Plaintiffs have asserted additional negligence claims against PLZ including claims arising out of PLZ's alleged failure to evaluate the construction area and/or its failure to provide adequate site access. However, Plaintiffs concede these alleged acts of negligence "may not be directly related to the ownership, maintenance[,] and use of the truck[.]" Therefore, at issue for purposes of this appeal of the summary judgment rendered in favor of Progressive is solely whether PLZ owed a duty to Rubin to attach warning signs on the back of the dump truck Rubin was driving and, if so, whether liability for any breach of that duty is covered by the Progressive policy.

4

Every motor vehicle, combination of motor vehicle and towed equipment, every self-propelled unit of equipment, self-propelled implement of husbandry, or towed implement of husbandry normally operating at speeds not in excess of twenty-five miles per hour on public streets and roads at all times shall be equipped with a slow moving vehicle emblem as follows:

. . . .

(3) The emblem required shall comply with current standards and specifications as established by the American Society of Automotive Engineers and approved by the commissioner.

Plaintiffs argue that because Rubin had to reduce the speed of the dump truck to twenty miles per hour or less in order to turn into the construction worksite and because he turned into the worksite at least thirteen times per day, the dump truck was "normally operating at speeds not in excess of twenty-five miles per hour" and, therefore, was required to have a "slow moving vehicle emblem" contemplated by La.R.S. 32:377.

In response, Progressive argues that there is no evidence suggesting that the dump truck normally operated at speeds less than twenty-five miles per hour, and, therefore, La.R.S. 32:377 does not apply in this case. We agree.

Rubin testified during his deposition that on the day of the accident, he had already hauled three loads from the worksite and was travelling on I-10 toward the construction worksite to pick up more materials to haul. He stated that he travelled at sixty miles per hour, which was the speed limit in the construction zone on I-10, and, approximately one mile before he needed to enter the worksite, he activated the left turn signal, moved into the left lane, turned off the signal, and activated the emergency flashers. He then activated the left turn signal again approximately ¼ mile before the entrance into the worksite. He indicated that, during this time, he gradually reduced his speed as he approached the worksite entrance, and, when he

5

was a couple of truck lengths away from the entrance, he was rear-ended by the Traverse, which was driven by Ortego. He testified that, at the time of impact, he was travelling at approximately twenty miles per hour or less.

While Rubin testified that he was travelling approximately twenty miles per hour or less at the time of impact, there is no indication that he normally drove at this speed when hauling construction materials for PLZ or otherwise. Rather, his testimony was that he travelled the speed limit on I-10 until he gradually reduced his speed within a mile of the entrance to the worksite to prepare to turn. Therefore, we find no merit to Plaintiffs' argument that La.R.S. 32:377 is applicable in this case.

Plaintiffs also cite to *Williams v. Galliano,* 601 So.2d 769 (La. App. 1 Cir.), *writ denied*, 604 So.2d 1306 (La.1992), which, according to Plaintiffs in their appellate brief, "recognizes the duty owed by a truck owner to properly equip its truck with appropriate warning devices[.]" In *Williams*, a garbage truck driver was killed when he was outside of his truck closing the tailgate and a Mack truck reversed toward him, pinning him between the two trucks. At issue was whether there was insurance coverage under the Mack truck owner's comprehensive general liability policy, which excluded coverage for bodily injury arising out of the ownership, maintenance, or use of any automobile owned or operated by the insured, and specifically whether the Mack truck was "mobile equipment" excluded from the policy's definition of "automobile." The appellate court affirmed a summary judgment in favor of the insurer and found no coverage. It concluded that the Mack truck was an automobile and stated that there was no basis for the Mack truck owner's liability that was "independent of and not concurring with the ownership, maintenance, use, loading or unloading of the truck

6

as an automobile[,]" and that any "potential liability" on the part of the Mack truck owner "for failing to equip the truck with an audible back up warning is directly related to the ownership or maintenance of the truck." *Id.* at 775. It further stated that given its conclusion that the truck was an automobile "and that the ownership, maintenance, use, loading or unloading of any automobile was an essential ingredient of any duty which [the Mack truck owner] may have breached in this case," the policy did not provide coverage. *Id.* at 775.

While *Williams* suggests that coverage was not available under the policy at issue because the truck was considered an automobile and because its maintenance or use was necessarily part of *any* duty that *may* have been owed or breached, we fail to see how *Williams* establishes a duty on the part of PLZ in the instant case to equip its dump truck with a warning sign or emblem, as the case did not involve the question of whether and to what extent a duty was owed.

Plaintiffs also argue that the facts of the case establish that PLZ owed a duty to Rubin, its contracted driver, to equip the dump truck with some type of warning sign. Specifically, Plaintiffs suggest that the testimony of the rear-ending driver, Ortego, indicating that an orange warning sign affixed to the rear of the dump truck would have helped him avoid the accident, establishes that PLZ owed a duty to Rubin to install such a sign.

Ortego testified during his deposition that on the day of the accident, he entered I-10 at the Rayne/Church Point exit, the speed limit was seventy miles per hour, and he was almost certain that he travelled at that speed. He also testified that he was aware that he was in a construction zone prior to the accident, he did not know for sure whether he observed a reduction of speed in the construction

zone but guessed that the speed limit was sixty or sixty-five miles per hour, and he believed he reduced his speed. He described the accident as follows:

> [S]o, I'm driving eastbound. . . . There's a vehicle in front of me, though. I'm driving behind that vehicle. . . . I could vaguely see the construction truck way up ahead. But from my perspective . . . there was a vehicle in front me, so that may have sort of affected my judgment as to . . . whether this truck was moving or what. But from my point of view, it seemed as though this was just a construction truck travelling down the interstate. . . . So if I recall correctly, I looked over to the right because I was . . . travelling in the left lane, but I could see that it was slowing down, so . . . I looked over to the right with the intention to change lanes. By the time I looked back . . . suddenly I realized . . . that this construction truck was . . . at least barely moving and was taking up virtually the entire left lane.

> So if I recall correctly, the vehicle in front of me moved out of the way. . . . So I think probably they changed lanes because they realized that it was, in fact, moving very slowly or not all - - the construction truck, that is. And after that, like I said, I looked right because I was . . . intending on merging. And when I looked back, I believe that the vehicle in front of me sort of somewhat rapidly merged to the right lane. And then, boom, right there in front of me was . . . what I initially perceived as being a moving . . . construction truck, rather, stopped . . .

> So once I got right there, just a few yards . . . the vehicle in front of me merged, and I realized it was too late and . . . this truck is definitely not going anywheres [sic]. And there's an 18-wheeler in the right lane. I had no way to swerve.

Ortego also testified that while he was aware he was driving in the construction zone on I-10, he did not realize there was ongoing construction until he was about to make impact, there were no flagmen present, and there was no indication that the dump truck at issue was related to the construction site.

During his deposition, Ortego was also shown a photograph of a truck that had a large orange sign affixed to the back of it stating, "Construction Vehicle Do Not Follow." Counsel indicated that the photo was not taken in connection with the accident but rather "was taken off of the internet yesterday" following a "google search." Following multiple objections, Ortego testified, "I think that if

there would have been . . . any indicators, such as this orange sign . . . this accident probably would not have occurred." Ortego was also asked how such a sign would have prevented the accident given that he saw the dump truck before hitting it, and Ortego stated, "I'm just thinking it . . . certainly wouldn't have hurt. I mean, it's a bright orange sign. . . . I didn't say that . . . I absolutely unequivocably [sic] would not have gotten in this accident if this sign were here."

Plaintiffs also argue that because several other trucks working at the construction site had orange warning signs affixed to them, PLZ owed a duty to Rubin to place the same type of sign on the truck Rubin drove. Plaintiffs point to the deposition testimony of Brett Deshotels, the corporate representative for DG Construction and Hauling, LLC ("DG"),[2] who indicated that DG's trucks operating at the I-10 worksite had orange signs affixed to the rear that said, "Construction Vehicle, Keep Back, Do Not Follow" or "Construction Vehicle, Do Not Follow[.]" Deshotels explained, however, that these signs were not required in connection with the I-10 improvement project job, but rather they were required for another job at a plant in Luling. He said:

A    They [DG's trucks] were hauling dirt into a plant, and . . . they [the general contractor/DG's "client"] wanted that the vehicles inside the plant wouldn't follow the trucks into some areas that they didn't need to go into.

Q    So, it's your testimony that those signs were placed there to keep vehicles inside the plant from following your dump trucks inside the plant?

A    So, inside –

. . . .

---

[2] James Construction Group, LLC was the general contractor on the I-10 construction project at issue, and it contracted with DG for truck and hauling services. DG, in turn, contracted with PLZ to perform some of the truck hauling services originally to be performed by DG, and PLZ contracted with Rubin, an independent contractor, to drive the dump truck at issue and haul construction materials to and from the worksite.

A       Inside the plant you would be working, if there was a pickup truck following your truck to go off road, they didn't want those pickup trucks following the dump trucks to go off road. These trucks could go off road.

When asked how he knew that was the purpose of signs, Deshotels explained that the superintendent of Cajun Constructors, who was the general contractor in connection with plant job, told him that. Deshotels also explained that the reason the signs were not taken off the back of DG's trucks in connection with the I-10 project was that the signs were stickers and removing them would pull the paint off the rear of the truck.

Deshotels also testified that the general contractor of the I-10 improvement project, James Construction Group, LLC ("James"), did not require any type of signage to be affixed to any of the dump trucks working in connection with the project and he was not aware of whether James' trucks working on site had any warning signs affixed to them. He also stated that DG did not require any of its own contractors to apply signage to their trucks in connection with the I-10 project.

Deshotels also indicated that, other than the plant project that required DG's trucks to have signage to prevent other vehicles from following them into restricted areas of the plan, he was not aware of any other requirement that the orange signage on DG's trucks was to be used by construction vehicles on highway projects such as the one at issue.

During his deposition, Deshotels was also shown a photo dated September 25, 2018, and when asked what the photo depicted, he testified: "This is Barriere laying asphalt. . . . We don't have asphalt tarps on our trucks. . . [T]hey're not doing dirt work." Deshotels further indicated that DG did not work for Barriere and he did not know how the trucks depicted in the photograph entered or exited

10

the worksite. He also stated that while three or four of the trucks in the photo appeared to have orange signs affixed to the rear of them, the image was "too distorted[,]" and he could not read the wording on the signs.

Deshotels also indicated that there were multiple orange signs posted along the roadway warning motorists of the construction zone, but neither PLZ, DG, nor James decided where those signs were to be placed; rather, that was determined by the project engineer, and Deshotels did not know who that was.

Plaintiffs also point to the corporate deposition of James, through its representative, Rusty Bergeron. Bergeron testified that the Department of Transportation and Development's (DOTD'S) plans and specifications for the I-10 improvement project governed the traffic controls that were in place and that DOTD had third-party representatives on site to ensure daily compliance. He also stated that the contract between DOTD and James did not have any requirements regarding signage for the back of the dump trucks that were hauling materials in connection with the I-10 project.

In response to Plaintiffs' arguments, Progressive argues on appeal that there is no contract, statute, or legal authority under Louisiana law that imposed a duty on PLZ to supplement the lights and emergency flashers on the rear of its dump truck with an additional warning sign of any kind. Progressive further argues that it was Rubin as an independent contractor, and not PLZ, who was responsible for providing himself with a safe place to work. Progressive also points to Rubin's own testimony about how the accident happened, and his acknowledgment that there was nothing that PLZ could have done to have made the dump truck more visible at the time of the accident.

Rubin testified in his deposition that PLZ was responsible for maintenance of the dump truck; however, Rubin indicated that the dump truck was in good mechanical condition the entire time that he drove it. Rubin also testified that approximately a mile before the accident, he activated his rear emergency flashers and his left turn signal and, based on his pre-trip inspection of the dump truck, he had no reason to believe that they were not working. He also stated that there was nothing that would have prevented another driver from seeing them and he acknowledged that the rear-ending driver, Ortego, said that he saw the dump truck before impact. Rubin further testified as follows:

Q    Are you aware of anything that Perry [PLZ's owner] did or
      didn't do on this particular day to make your vehicle more
      visible to traffic traveling behind it?

A    No, sir.

. . . .

Q    Okay. Are you aware of anything Perry could have done to
      prevent this accident?

A    Put a merging lane. (Witness chuckles.)

. . . .

Q    Anything else?

A    That's it.

. . . .

Q    Did you ever complain to anyone about signs on the back of your
      truck, during the work that you performed for PLZ Trucking on
      this job?

A    No, sir.

Rubin also indicated that there were multiple signs along the roadway prior to entering the construction site that warned motorists that trucks would be exiting and entering the highway.

While Rubin's testimony suggests that PLZ owed him a duty regarding the maintenance of the dump truck, he admitted that truck was in proper working order on the day of the accident and that there was nothing PLZ could have done to make the dump truck more visible or otherwise prevent the accident, except for installing a merge lane. Neither Ortego's testimony, nor that of DG or James, suggests that any type warning sign was required to be affixed to the back of the dump truck in connection with the I-10 construction project at issue, and there is no statute or jurisprudence that otherwise establishes that PLZ owed its contracted driver, Rubin, a duty to install any type of warning sign on its dump truck. Therefore, we conclude that PLZ did not owe such a duty to Rubin in this case, and summary judgment dismissal of Plaintiffs' claims against Progressive was proper.

Because we conclude that PLZ did not owe a duty to Rubin to affix a warning sign on the back of the dump truck at issue in this case, the issue of whether any liability for a breach of that duty is covered by Progressive's policy at issue is moot.

## DECREE

For the reasons stated above, the summary judgment dismissal of Plaintiffs' claims against Progressive is hereby affirmed. Costs of this appeal are assessed to Plaintiffs, Sidey Rubin, Jr. and Katie Rubin.

**AFFIRMED.**

13